UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BORIS ROGINSKY,

                         Plaintiff,

v.                                              Case No. 1:19-cv-01613(LJV)(JJM)

M&T BANK,

                         Defendant.

---

## DECLARATION OF MEGHAN FRANK

Meghan Frank, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1. I am currently a Vice President and Senior Employee Relations Specialist with Manufacturers and Traders Trust Company ("M&T"). I submit this declaration in support of M&T's motion for summary judgment, seeking dismissal of the claims asserted by Boris Roginsky ("Mr. Roginsky"). I have personal knowledge of the facts and events summarized in this declaration.

### I. My Background

2. I began working for M&T in July 2012. From July 2012 to June 8, 2015, I served as an Employee Relations Specialist I. From June 9, 2015 to January 13, 2019, I served as an Employee Relations Specialist. I became a Senior Employee Relations Specialist (which is my current title) on January 14, 2019. In these positions, I have generally been responsible for working with business-line managers on employee performance management, conducting

workplace investigations, and assisting employees and management with human resources policy interpretation and enforcement.

3. I hold a "Professional in Human Resources" Certification, and I am a "Certified Professional" by the Society for Human Resource Management. I also hold a Master of Professional Studies degree from Pennsylvania State University.

## II. M&T's Anti-Discrimination and Anti-Harassment Policies and Complaint Procedure

4. M&T is a commercial bank that offers a broad range of financial services. It maintains retail bank branches in several states, including in New York.

5. "M&T Bank" is not an entity, and therefore, it has no employees. "M&T Bank" is a trade name. Mr. Roginsky was never employed by "M&T Bank." Mr. Roginsky was employed by Manufacturers and Traders Trust Company, which is referred to in this declaration as "M&T."

6. M&T is an equal opportunity employer. The company maintains an affirmative action program designed to identify, train, and promote qualified employees. M&T notifies all employees and applicants of its equal employment opportunity policies through its compliance with federal and state posting requirements and through written policies published on M&T's intranet.

7. All of the policies considered to be part of M&T's "Employee Handbook" are available on the M&T intranet. All M&T employees sign an Acknowledgment of Receipt of

Employee Handbook and Acknowledgment of Sexual and Other Unlawful Harassment Policy. Mr. Roginsky signed such an Acknowledgment, which is attached as **Exhibit 1**.

8. Mr. Roginsky worked for M&T from August 15, 2013 up to January 23, 2019. Mr. Roginsky voluntarily resigned. M&T did not terminate his employment.

9. During the entire period of Mr. Roginsky's employment, M&T maintained a "Sexual and Other Unlawful Harassment Policy" (the "Policy"), which, among other things, strictly prohibited discrimination, harassment, and retaliation and provided a process for reporting harassment and retaliation. I have attached as **Exhibit 2** a copy of the Policy that was in effect as of August 2013 (when Mr. Roginsky joined M&T) and up to March 2014. I have attached as **Exhibit 3** a copy of the Policy that was in effect as of March 2014 and up to March 2016. I have attached as **Exhibit 4** a copy of the Policy that was in effect as of March 2016 and up to March 2017. I have attached as **Exhibit 5** a copy of the Policy that was in effect as of March 2017 and up to October 8, 2018. I have attached as **Exhibit 6** a copy of the Policy that went into effect as of October 9, 2018 and continued in effect up to September 2019.

10. All versions of the Policy include a complaint procedure for employees to report harassment, discrimination, or retaliation in the workplace. The complaint procedure is very similar in all versions of the Policy. Employees are encouraged to immediately report harassment, discrimination, or retaliation, regardless of the offender's identity or position. An employee may report incidents of harassment, discrimination, or retaliation to his or her immediate supervisor, department head, or the Employee Relations Specialist (a human

resources professional) that supports the employee's business line. *See* Ex. 2 at p. MT0000260-61, Ex. 3 at MT0000254-55, Ex. 4 at MT0000257-58, Ex. 5 at MT0000264-65.

### III.　**Mr. Roginsky's Complaint and M&T's Initial Response**

11.　In early July 2018, Chris Suszek, who was at that time a Human Resources Business Partner and an Assistant Vice President, informed me that Mr. Roginsky had expressed concerns about possible discrimination and harassment based on national origin, religion, and age. Mr. Suszek was not Mr. Roginsky's supervisor or department head, nor was Mr. Suszek the Employee Relations Specialist responsible for supporting Mr. Roginsky's business line. Mr. Roginsky did not submit a written complaint to Mr. Suszek. Mr. Roginsky expressed generalized concerns to Mr. Suszek during a conversation. Mr. Suszek referred the matter to me, as I was the Employee Relations Specialist who supported Mr. Roginsky's business line.

12.　This was the first time that Mr. Roginsky had ever expressed concerns about discrimination, harassment, or retaliation to any member of M&T's Human Resources Department or Employee Relations Department. At this time (July 2018), Mr. Roginsky reported to Joseph Hassett. During the time that Mr. Roginsky reported to Randall Chestnut (September 2014 up to June 2016), Mr. Roginsky never submitted a complaint to M&T's Human Resources Department or Employee Relations Department regarding alleged discrimination, harassment, or retaliation. Mr. Roginsky never submitted a complaint to M&T's Human Resources Department or Employee Relations Department regarding Mr. Chestnut at any time. During the time that Mr. Roginsky reported to Peter Beno (August 2013 up to September 2014), Mr. Roginsky never submitted a complaint to M&T's Human Resources Department or

Employee Relations Department regarding alleged discrimination, harassment, or retaliation. Mr. Roginsky never submitted a complaint to M&T's Human Resources Department or Employee Relations Department regarding Mr. Beno at any time.

13. In response to Mr. Suszek's referral, I began to conduct an investigation. I contacted Mr. Roginsky and arranged a meeting. I met with Mr. Roginsky on or about July 12, 2018. During the meeting, Mr. Roginsky said that he felt discriminated against and "bullied" based on his national origin, religion, and age. His expressed this belief in very general terms. He provided no details to support his belief. He did not cite specific events or attribute any discriminatory conduct to any particular individuals. I asked Mr. Roginsky to provide details so that I could further investigate his concerns. He did not provide such details. I also asked Mr. Roginsky to submit a written statement to assist me in my investigation. He did not provide a written statement.

14. On or about July 19, 2018, about one week after this initial meeting, I followed-up with Mr. Roginsky to again request a written statement. Instead of submitting a written statement, Mr. Roginsky requested an additional meeting, which I accepted. At the second meeting, he supplied no facts or details to assist in investigating his claims. He did not provide a written statement.

15. On August 29, 2018, Mr. Roginsky sent me an email in which he acknowledged that I had requested a written statement and told me that I could obtain the requested written statement from his attorney, Harvey Sanders. Mr. Roginsky copied Mr.

Sanders on this email. I have attached a copy of this email as **Exhibit 7**. Neither Mr. Roginsky nor Mr. Sanders provided a written statement.

**IV. Mr. Roginsky's Journal and
My Further Investigation and Requests for a Written Statement**

16. In September 2018, Mr. Roginsky expressed generalized concerns to Chris Lightcap about alleged harassment and bullying. At that time, Mr. Lightcap was an Operations Manager VII in the Customer Asset Management, Mortgage, Mortgage Servicing, and Consumer Lending Department. Mr. Lightcap was not in M&T's Human Resources Department, and he was not Mr. Roginsky's supervisor.

17. Mr. Lightcap met with Mr. Roginsky to discuss Mr. Roginsky's concerns. Mr. Roginsky expressed generalized complaints to Mr. Lightcap about alleged mistreatment and bullying. Mr. Roginsky also told Mr. Lightcap that he had prepared a journal that purportedly documented the discrimination and harassment. Mr. Roginsky provided Mr. Lightcap with a copy of this journal.

18. On or about September 14, 2018, Mr. Lightcap provided me with a copy of Mr. Roginsky's journal. I have attached as **Exhibit 8** the copy of Mr. Roginsky's journal that was provided to me. The journal did not provide facts supporting Mr. Roginsky's allegations of workplace discrimination or harassment. The journal included disjointed commentary that appeared to be inconsistent with reality. By way of example, the journal referred to a plot purportedly orchestrated by Mr. Morrison (an M&T employee) to follow Mr. Roginsky on a family vacation to the Dominican Republic. Mr. Roginsky claimed that a "Victor Ziskind" was planted at the resort by M&T to monitor Mr. Roginsky's behavior. The journal also referred to

M&T reporting Mr. Roginsky to "agencies." The journal included numerous entries in which Mr. Roginsky believed that he heard strange comments from other employees on his floor, but Mr. Roginsky was not aware of the speaker of these comments, and Mr. Roginsky did not visually observe any person making the comments. For example, in one entry, Mr. Roginsky claims to have heard the phrase "he is lying" while walking around the bathroom. In another entry, Mr. Roginsky claims to have heard an unidentified person say "he is crazy." Upon reading the journal, I believed that Mr. Roginsky may be suffering from a health problem.

19. Mr. Roginsky's conduct caused business-line management and members of the Human Resources department to reasonably believe that Mr. Roginsky's ability to perform the essential functions of his position may be impaired. Accordingly, on or about September 28, 2018, I asked Mr. Roginsky to consult with his own medical doctor regarding the contents of his journal. I sent Mr. Roginsky an email on September 28, 2018 memorializing this request. I have attached a copy of that email as **Exhibit 9**. M&T's decision to ask Mr. Roginsky to seek medical consultation was not retaliatory. M&T's decision was motivated by a legitimate, good-faith concern for Mr. Roginsky's well-being and the well-being of those working with him.

20. On October 2, 2018, I met with Mr. Roginsky again and asked him to provide details about the alleged discrimination and harassment and to provide a statement summarizing the alleged discrimination and harassment. I asked Mr. Roginsky if he could identify any of the individuals on his floor who made inappropriate comments, as referenced in his journal. Mr. Roginsky could not provide names. I asked him if the voices that he heard were male or female. He could not provide an answer. I sent Mr. Roginsky an email that same day memorializing my request for a written statement, which I have attached as **Exhibit 10**. I

explained in my email, as I had done during our meeting, that I could not complete an investigation of his concerns without this additional information.

21. Even though Mr. Roginsky had not provided the requested written statement or details of any alleged discrimination or harassment, I investigated his concerns to the extent possible. I spoke to Joseph Hassett, who was Mr. Roginsky's direct supervisor. I spoke to Chris Lightcap, who was Mr. Hassett's supervisor and who had received Mr. Roginsky's journal. I spoke to Joseph Morrison, who was referenced in Mr. Roginsky's journal. I asked each of these individuals if they had ever heard anyone make any discriminatory comments to, or about, Mr. Roginsky. They told me that they had never heard any such comments or observed any discriminatory behavior toward Mr. Roginsky.

22. On October 5, 2018, Mr. Roginsky sent an email to me and Chris Lightcap. Mr. Roginsky copied his attorney and his wife. I have attached a copy of his email as **Exhibit 11**. In his email, Mr. Roginsky refused to consult with his own physician, as I had requested in my email of September 28. Mr. Roginsky acknowledged my request for a written statement summarizing the alleged discrimination and harassment. Mr. Roginsky stated that he would "work with Harvey [Mr. Roginsky's attorney] on it and . . . provide it you." Mr. Roginsky's email did not provide any facts to support his allegations of workplace discrimination or harassment. A part of a resolution of his dispute, he demanded a transfer into a new title.

23. Neither Mr. Roginsky nor Mr. Sanders provided the written statement that Mr. Roginsky promised in his October 5, 2018 email.

24. After Mr. Roginsky refused to consult his own physician, M&T's Human Resources Department asked Mr. Roginsky to participate in an independent medical exam. Mr. Roginsky was placed on a leave of absence, with full pay, on November 2, 2018. M&T's decision to place Mr. Roginsky on a leave of absence to seek medical consultation was not retaliatory. M&T's decision was motivated by a legitimate, good-faith concern for Mr. Roginsky's well-being and the well-being of those working with him. Mr. Roginsky was not demoted. His title and responsibilities did not change. He received no reduction in pay or benefits. He received no discipline or corrective action. M&T took no adverse employment action against Mr. Roginsky.

25. Mr. Roginsky participated in an independent medical exam, and he was cleared to return to work on December 17, 2018.

### V. My Follow-Up and Request for a Written Statement after Mr. Roginsky's Return

26. Upon Mr. Roginsky's return, I followed-up with him concerning his allegations of discrimination and harassment and the status of the written statement summarizing the alleged discrimination and harassment. In an email dated December 21, 2018, I asked Mr. Roginsky to provide me with additional information regarding his allegations of discrimination and harassment. I have attached a copy of my December 21, 2018 email as **Exhibit 12**.

27. Mr. Roginsky never provided the requested statement or any supporting information.

28.     Mr. Roginsky voluntarily resigned his employment with M&T. He provided written notice of his resignation to Joseph Hassett on January 8, 2019. His resignation became effective on January 23, 2019.

29.     From July 2018 up to Mr. Roginsky's voluntary resignation from M&T, I remained ready and willing to further investigate Mr. Roginsky's concerns and allegations of discrimination and harassment and to provide additional remedies if needed. But Mr. Roginsky never provided me with information supporting his allegations. Without additional information, such as names of those who participated in discriminatory conduct and the nature of the conduct, M&T was not able to conduct a further investigation or to provide additional remedies.

### VI.     Mr. Roginsky's Compensation and Supervisors

30.     At the time of Mr. Roginsky's resignation, his annual base salary at M&T was $122,400. This was his base salary for 2018, which was the highest annual base salary that Mr. Roginsky ever earned at M&T. In addition to salary, Mr. Roginsky was eligible to earn merit-based bonuses, which were awarded at the discretion of management. In 2018, M&T paid Mr. Roginsky a bonus of $12,000, which was attributable to 2017 performance. In 2018, Mr. Roginsky's total compensation (salary and bonus) was $134,400.

31.     M&T awards and pays merit-based bonuses in February or March for the previous calendar year's performance. If Mr. Roginsky had earned a merit-based bonus for 2018 performance, the bonus would have been awarded and paid in February or March of 2019. Mr. Roginsky voluntarily resigned his employment as of January 23, 2019, before 2018 bonuses

were awarded and paid. As part of its standard company practice, M&T does not award and pay bonuses to former employees.

32. During Mr. Roginsky's employment with M&T, Mr. Roginsky reported to three supervisors/managers: Peter Beno; Randall Chestnut; and Joseph Hassett. Mr. Beno served as Mr. Roginsky's supervisor from August 2013 (when Mr. Roginsky joined the bank) up to September 2014. Mr. Chestnut served as Mr. Roginsky's supervisor from September 2014 up to June 2016. Mr. Hassett served as Mr. Roginsky's supervisor from June 2016 up to January 23, 2019, when Mr. Roginsky's resignation became effective.

September 30, 2021

_____
Meghan Frank