UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BORIS ROGINSKY,

                Plaintiff,

v.                                            Case No. 1:19-cv-01613(LJV)(JJM)

M&T BANK,

                Defendant.

## M&T'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF SUMMARY JUDGMENT MOTION

**HODGSON RUSS LLP**
*Attorneys for Defendant*
Robert J. Fluskey, Jr.
Matthew K. Parker
Fallon E. Martin
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

I. ROGINSKY'S ASSIGNMENT TO A DATA QUALITY ROLE WAS NOT AN ACTIONABLE ADVERSE EMPLOYMENT ACTION. ...................................................2

II. M&T PRESENTED NON-DISCRIMINATORY REASONS FOR ROGINSKY'S ASSIGNMENT TO THE DATA QUALITY POSITION, AND ROGINSKY PROFFERED NO EVIDENCE OF PRETEXT. ...............................................................4

III. ROGINSKY HAS FILED TO ESTABLISH A *PRIMA FACIE* CASE BASED ON THE THREE "DENIED PROMOTIONS." ...................................................................4

IV. ROGINSKY'S PAID MEDICAL LEAVE WAS NOT AN ACTIONABLE ADVERSE EMPLOYMENT ACTION, AND EVEN IF IT WERE, M&T PROFFERED NON-DISCRIMINATORY REASONS FOR ITS DECISION. ................6

V. ROGINSKY CANNOT ESTABLISH CONSTRUCTIVE DISCHARGE OR A HOSTILE WORK ENVIRONMENT. ...........................................................................7

VI. THE *FARAGHER/ELLERTH* DOCTRINE BARS ROGINSKY'S HARASSMENT CLAIMS. ...........................................................................................................................9

VII. ROGINSKY NEVER FILED A COMPLAINT ABOUT BENO, AND THE CLAIM IS UNTIMELY. ..................................................................................................10

# **TABLE OF AUTHORITIES**

PAGE

**Federal Cases**

*Bently v. Autozoners*,
  935 F.3d 76 (2d Cir. 2019)..................................................................................................8

*Campbell v. National Fuel Gas Distrib. Corp.*,
  2016 WL 8929078 (W.D.N.Y. July 26, 2016).....................................................................7

*Chertkova v. Connecticut General Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996) ...................................................................................................8

*De La Cruz v. N.Y.C. Human Resources Admin. Dep't of Social Servs.*,
  82 F.3d 16 (2d Cir. 1996) ...................................................................................................4

*Finskelshteyn v. Staten Island Univ. Hosp.*,
  687 F. Supp. 2d 66 (E.D.N.Y. 2009) ..................................................................................8

*Hampton v. Bowles*,
  98 F.3d 107 (3d Cir. 1996) .................................................................................................4

*Hong Yin v. North Shore LIJ Health Sys.*,
  20 F. Supp. 3d 359 (E.D.N.Y. 2014) ..................................................................................9

*Jones v. Allstate Ins. Co.*,
  707 F. App'x 641 (11th Cir. 2017) .....................................................................................8

*Kelly v. N. Shore-Long Island Jewish Health Sys.*,
  166 F. Supp. 3d 274 (E.D.N.Y. 2016) ................................................................................7

*Kessler v. Westchester*,
  461 F.3d 199 (2d Cir. 2006) ...............................................................................................3

*Lopez v. S.B. Thomas, Inc.*,
  831 F.2d 1184 (2d Cir. 1987) .........................................................................................8, 9

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) ...............................................................................................3

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973).........................................................................................................3, 5

*Odom v. Doar*,
  497 Fed. Appx. 88 (2d Cir. 2012)..................................................................................8, 10

# **TABLE OF AUTHORITIES - cont'd**

PAGE

*Percy v. New York (Hudson Valley DDSO)*,
　264 F. Supp. 3d 574 (S.D.N.Y. 2017) ...............................................................................8, 10

*Santiesteban v. Nestle Waters N. Am., Inc.*,
　61 F. Supp. 3d 221 (E.D.N.Y. 2014) .......................................................................................8

*Spence v. Maryland Cas. Co.*,
　995 F.2d 1147 (2d Cir. 1993) .................................................................................................8

*Stetson v. NYNEX Serv. Co.*,
　995 F.2d 355 (2nd Cir. 1993) .................................................................................................9

*Winslow v. Pulaski Academy*,
　448 F. Supp. 3d 197 (N.D.N.Y. 2020) ....................................................................................6

## PRELIMINARY STATEMENT

After putting M&T to the cost of investigating and litigating his claims as pleaded, Roginsky has now abandoned many of his false allegations. He no longer contends that M&T representatives followed him on a vacation to the Dominican Republic. He no longer alleges that M&T representatives placed a map of Russia on his lawn. He no longer claims that the bank reported him as a "spy." He has also dropped several other assertions. *See* Dkt. 38-3 ¶¶ 81-111.

Only four primary contentions remain: (1) Joseph Hassett purportedly assigned Roginsky to a "less prestigious" position; (2) unidentified individuals did not offer Roginsky three positions; (3) M&T's decision to place Roginsky on paid medical leave was "retaliatory"; and (4) M&T subjected Roginsky to a "hostile work environment" because unidentified, non-supervisory employees allegedly made anti-Semitic remarks. The evidentiary record proves that these claims fail as a matter of law.

## ARGUMENT

In response to M&T's motion, Roginsky has effectively abandoned many of his sworn allegations, as summarized by the table below:

| Allegation | Complaint ¶ | Statement of Facts ¶[1] |
|---|---|---|
| Dropping money on the floor for Roginsky to pick up | 22 | 77-78(a)-(c) and (f) |
| Being "followed" by M&T personnel to a hotel/wake | 28 | 79-80(b)-(d) |
| Being reported as a "spy" | 29 | 81-82 |
| Being "followed" to the Dominican Republic | 30 | 83-84 |
| Hearing someone from M&T yell "thieves are coming" | 31 | 85-86 |
| A map of Russia being placed on his lawn | 32 | 87-88 |
| Hearing rumors about affairs with female co-workers | 20 | 106-107 |
| Hearing rumors about Roginsky being a "spy" | 20 | 108-109 |
| Hearing derogatory names about his wife | 26 | 110-111 |

---

[1] This column identifies the paragraph numbers of M&T's Rule 56.1 Statement of Undisputed Facts (Dkt. 33-2) and the corresponding paragraph numbers in Plaintiff's Rule 56(A)(2) Opposing Statement to Defendant's Proffered Statement of Undisputed Facts (Dkt. 38-3). Roginsky responded "undisputed" to these paragraphs.

Roginsky still contends that he saw money on the floor at M&T and that this somehow constituted discrimination. Dkt. 38-4 at 15. To be clear, Roginsky never observed an M&T employee drop money on the floor. He purportedly saw money on the ground and had no idea how it got there. Dkt. 33-9 at 63:11-65:7. He asserts in opposition that he "believed" certain M&T employees followed him to a hotel/wake, even though he admitted at deposition that he never saw them and does not know if they were present. *Id.* 70:4-80:18. They were obviously not there. Hassett ¶ 23; Morrison ¶ 12. Roginsky's interpretation of the oath—and his willingness to present baseless allegations and wait for M&T to disprove them—provides important context for the allegations that remain in dispute.

I.  **Roginsky's assignment to a Data Quality role was not an actionable adverse employment action.**

Roginsky alleges that Hassett "reduced" Roginsky's work responsibilities and assigned Roginsky to a role that was "of lower significance and prestige." Dkt. 38 ¶¶ 5, 7. The undisputed evidence proves that this adjustment of work responsibilities was not an adverse employment action.

In 2017, M&T senior management adopted a new "data quality" initiative, and as a result, Hassett was tasked with filling a new Data Quality position within his department. Hassett determined that Roginsky possessed the necessary skillset to fill the role, so he assigned Roginsky. Hassett ¶ 5; Hassett Reply ¶ 3. Roginsky's title was not changed. Dkt. 33-9 at 96:22-23. Roginsky continued receiving the same compensation. Hassett ¶ 5; Dkt. 33-9 at 96:14-16. He remained the ***most highly compensated manager on Hassett's staff***. Hassett ¶ 5; Dkt. 33-2 ¶ 76(a)-(c), (f)-(i); Dkt. 38-3 ¶ 76 (admitting these material facts). The Data Quality role was certainly not "of lower significance and prestige." The data quality effort was of high visibility at

2

the bank and was initiated by senior management. Hassett Reply ¶ 3. This Data Quality role was a management-level position. *Id.*

Roginsky wrongly asserts, without evidence, that Hassett relocated Roginsky from an office to a cubicle as part of this new assignment. Dkt. 38 ¶ 4. Christopher Lightcap, not Hassett, relocated Roginsky to a supervisory cubicle because Lightcap hired a new direct report who was going to occupy Roginsky's office. This had nothing to do with his Data Quality position. Lightcap ¶ 9; Hassett Reply ¶ 5; *compare* Dkt. 33-2 ¶ 76(j) *to* 38-3 ¶ 76 (Roginsky effectively admits these material facts).

While Roginsky may have perceived (incorrectly) that the "Data Quality" role was of lower "prestige," he still failed to establish a *prima facie* case of employment discrimination because he has presented no evidence that it arose under circumstances giving rise to an inference of discrimination, which is an independent element. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). During his deposition, Roginsky admitted that Hassett did not discriminate against him or harass him (Dkt. 33-9 at 38:21-39:9) or make any comments about Roginsky's national origin, religion, or age. *Id.* at 39:19-40:4.

On pages 4-5 of his brief, Roginsky cites several decisions in support of his adverse employment action argument. But they are readily distinguishable because they presented clear examples of materially adverse changes in employment, and several of them analyzed the issue under a retaliation standard, not under Title VII's substantive anti-discrimination provisions. For example, in *Kessler v. Westchester*, 461 F.3d 199, 202-10 (2d Cir. 2006), the employee was transferred to a different geographic office and assigned to a new supervisor of parallel rank. The *Kessler* court found that this adverse action, couple with evidence of discriminatory motivation, could create fact issues under a retaliation standard. In *Lore v. City of Syracuse*, 670

F.3d 127, 171 (2d Cir. 2012), the employee was removed from her position as public information officer, relegated to "odds and ends in the Chief's Office," and then put on uniform duty. In *De La Cruz v. N.Y.C. Human Resources Admin. Dep't of Social Servs.*, 82 F.3d 16, 19-22 (2d Cir. 1996), the employee was transferred to a new division and returned to a "normal civil service rank." In *Hampton v. Bowles*, 98 F.3d 107, 116 (3d Cir. 1996), the employee was moved from detective duty to "road patrol" on the "heels of his EEOC filing." Furthermore, in the decisions cited by Roginsky, the plaintiffs presented evidence sufficient to support an inference or discrimination. Roginsky has presented no such evidence here.

II.   **M&T presented non-discriminatory reasons for Roginsky's assignment to the Data Quality Position, and Roginsky proffered no evidence of pretext.**

In it motion, M&T established—with evidence—that Roginsky's assignment to the "Data Quality" role was a business decision unrelated to Roginsky's national origin, religion, or age. Hassett ¶ 5; Hassett Reply ¶ 4. In response, Roginsky proffered no evidence of pretext. This point is most clearly demonstrated when one compares M&T's Rule 56 Statement to Roginsky's. M&T explained that Hassett assigned Roginsky to this new Data Quality role because Roginsky possessed the necessary skill set. Dkt. 33-2 ¶ 76(a)-(c). Roginsky does not dispute that fact. Dkt. 38-3 ¶ 76. M&T explained that Hassett's decision to assign Roginsky to this new role was a business decision. Dkt. 33-2 ¶ 76(d). Roginsky proffers no contrary evidence. Instead, Roginsky incorrectly contends that this statement is a "legal conclusion." Dkt. 38-3 ¶ 76(d).

III.  **Roginsky has filed to establish a *prima facie* case based on the three "denied promotions."**

During his deposition, Roginsky was unable to identify the positions that he was purportedly denied. Dkt. 33-9 at 132:13-134:10. In opposition, he cites three positions, but he has not even tried to identify the qualifications of the employees who obtained these positions,

4

whether those employees were in a protected class, or whether the individuals who made the hiring decisions acted with any discriminatory motive. The sum total of Roginsky's "case" can be summarized as follows: I applied for three positions. I did not get them. Therefore, someone at M&T must have discriminated against me. That is plainly insufficient to survive summary judgment.

To establish a *prima facie* case, Mr. Roginsky must show that he suffered an adverse employment action ***and that*** it occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In an attempt to manufacture such circumstances, Roginsky presents only two allegations: (1) he purportedly overheard Morrison telling Hassett that it is difficult to "get rid of an employee" after the employee turns forty-seven; and (2) he purportedly "overheard someone state around September of 2018 that 'Russians are not team players.'" Dkt. 38-4 at 8.

These allegations do not create triable issue. First, Hassett and Morrison played no role in filling these positions. Hassett Reply ¶ 6; Morrison ¶ 26. The positions were in M&T's Technology Department. Hassett, Roginsky, and Morrison did not work there. Hassett Reply ¶ 6; Hassett ¶¶ 2-4; Morrison ¶¶ 2-3. Second, Roginsky does not even allege that Hassett, Morrison, or anyone involved in the hiring process for these positions ever said that "'Russians are not team players.'" As with most of his allegations, Roginsky is unable to identify who purportedly made this comment. Dkt. 33-9 at 137:15-138:6 (Q. Did you visually observe the person who said that? A. I did not."). We know for sure that Morrison and Hassett never said it. Hassett ¶¶ 10, 14, 15, 17 15; Morrison ¶¶ 9, 10, 16.

While not sufficient to create a triable issue even if true, Roginsky's allegation that Morrison and Hassett discussed the difficulty of terminating an employee at age forty-seven is

5

false. Hassett ¶ 22; Morrison ¶ 9. Roginsky began to lose memory of the purported incident when pressed for details. Dkt. 33-9 at 129:14-130:3 ("Q. . . . And where were you when you heard this? A. I was in the office next to Mr. Hassett's office. At that time I had an office. Q. In July of '18, you had an office? A. No. No. *Never mind*. That's not -- no, I didn't have an office. I had a cube, but somewhere, I overheard that, but you know, *I don't remember*. But *maybe* previously I overheard that part. But I overheard this part *somehow*.") (emphasis added).

IV. **Roginsky's paid medical leave was not an actionable adverse employment action, and even if it were, M&T proffered non-discriminatory reasons for its decision.**

M&T's responsible decision to place Roginsky on short-term, paid medical leave after he refused to consult his own doctor was not an adverse employment action. Roginsky did not receive a decrease in salary, demotion, or a change in title. M&T issued no discipline or corrective action. Frank ¶¶ 22-25. Roginsky cites *Winslow v. Pulaski Academy*, 448 F. Supp. 3d 197 (N.D.N.Y. 2020) for the proposition that administrative leave constitutes adverse employment action. Dkt. 38-4 at 8. But he misstates the holding. There, the court recognized that administrative leave, ***when part of disciplinary action***, might constitute an adverse employment action under certain circumstances. 448 F. Supp. 3d at 207-208. The *Winslow* court concluded that the plaintiff had suffered an adverse employment action because the employer had ceased providing the plaintiff with tuition reimbursement and health benefits and prohibited the plaintiff from collecting personal belongings. The court found that these specific disciplinary actions "constituted a diminution in salary and a material loss of benefits." *Id.* at 208. None of the *Winslow* factors is present here.

M&T has also presented non-discriminatory reasons for the medical leave, and Roginsky has proffered no evidence of pretext. After receiving a copy of Roginsky's journal, M&T was

6

legitimately concerned for his health and the safety of other employees. Frank ¶ 24. In response, Roginsky offers no pretext evidence. Instead, he misstates the record by asserting that "Defendants *only support* for its decision is a single conclusory allegation by Frank that 'Mr. Roginsky's conduct caused business-line management and members of the Human Resources Department to reasonably believe that Mr. Roginsky's ability to perform the essential functions of his position may be impaired.'" Dkt. 38-4 at 9 (emphasis added). Roginsky neglects to mention that he had provided a journal to M&T that included bizarre conspiracy theories that were inconsistent with reality. Frank ¶¶ 18-19; Lightcap ¶ 5; Dkt. 33-28, 33-11. The journal provided ample reason for M&T to ask Roginsky to receive a medical consult. It would have been irresponsible for M&T not to do so. When Roginsky refused, the bank placed Roginsky on a medical leave, which had no impact on his pay, benefits, status, or job position. After receiving a medical consult, he returned to work. These facts are undisputed based on evidence submitted by M&T in admissible form.

**V.    Roginsky cannot establish constructive discharge or a hostile work environment.**

Roginsky's opposition confirms he cannot meet the "high" and "demanding" burden to establish constructive discharge or a hostile working environment. *Kelly v. N. Shore-Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016); *Campbell v. National Fuel Gas Distrib. Corp.*, 2016 WL 8929078, at *10 (W.D.N.Y. July 26, 2016).

In support of his constructive discharge claim, Roginsky misleadingly asserts that he was "threatened" with termination. Dkt. 38-4. What he really means is that he purportedly heard (but did not see) an unknown person say "fire him" and an unknown person say "get rid of him." Dkt. 33-9 at 201-202. He does not know if those statements were even about him. *Id.* Roginsky does

7

not attribute these statements to any supervisor, which is required to impute this alleged conduct to M&T. *Bently v. Autozoners*, 935 F.3d 76, 90-91 (2d Cir. 2019).

Roginsky's reliance on *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996) and *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) is misplaced. In *Chertkova*, the plaintiff's supervisors insulted her and threatened to fire her if she did not meet arbitrary performance objectives. 92 F.3d at 89. In *Lopez*, the plaintiff's supervisor told the plaintiff he would be fired at the end of a probationary period, regardless of performance. 831 F.2d at 1188. These types of direct threats of termination from a plaintiff's supervisor do not exist here.

Roginsky's other allegations do not establish constructive discharge. Changes in job responsibilities, getting the "silent treatment," and general dissatisfaction with working arrangements are insufficient to establish constructive discharge. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1150 (2d Cir. 1993); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2nd Cir. 1993); *Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 646 (11th Cir. 2017).

Similarly, the allegedly offensive comments that Roginsky relies upon cannot sustain a hostile work environment claim. First, the comments were not made by Roginsky's supervisors (*see* Dkt. 33-2 ¶¶ 42-43, 46-47), and as a result, they cannot be imputed to M&T. *Bently*, 935 F.3d at 90-91. In the decisions cited by Roginsky, the offensive comments were specifically attributed to the plaintiff's supervisors. Dkt. 38-4 at 13 (citing *Finskelshteyn v. Staten Island Univ. Hosp.*, 687 F. Supp. 2d 66, 78-79 (E.D.N.Y. 2009) and *Santiesteban v. Nestle Waters N. Am., Inc.*, 61 F. Supp. 3d 221, 243 (E.D.N.Y. 2014)). The alleged comment by Beno was a discrete, isolated remark allegedly made in 2013 or 2014, well outside the limitations period. *Odom v. Doar*, 497 Fed. Appx. 88, 89 (2d Cir. 2012); *Percy v. New York (Hudson Valley*

8

*DDSO)*, 264 F. Supp. 3d 574, 581 (S.D.N.Y. 2017). Second, Roginsky cannot identify *a single* M&T employee who ever uttered the phrases "dirty Jew," "stinky Jew," "crazy Russian," "thief," "cheater," or "Russians cannot be leaders." Dkt. 33-2 ¶¶ 89-105. If Roginsky was subjected to these types of offensive comments daily (he was not), surely he should be able to identify at least one person. Roginsky's hostile work environment claim is also belied by the fact that many of the allegations he attributes to a hostile environment were admittedly false. *See supra*, pages 2-3.

**VI.      The *Faragher/Ellerth* doctrine bars Roginsky's harassment claims.**

Roginsky correctly notes that *Faragher/Ellerth* typically applies when non-supervisory employees are accused of harassment. Dkt. 38-4 at 16-17. As M&T's opening papers demonstrated, that is precisely the case here. Roginsky now contends that "much of the harassment and discrimination Plaintiff endured was at the hands of his supervisors, specifically Hassett (who demoted Plaintiff and moved him to the cubicle, and then excluded him from communications and meetings), Beno (who yelled at Plaintiff, told Plaintiff he 'likes to deal with a tough Russian,' and told Plaintiff about his family connections to Hitler), and Morrison (who also excluded Plaintiff from communications)." These are demonstrably false assertions based on the undisputed evidence. They are not sufficient to form the basis of a harassment claim in any event. *Hong Yin v. North Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 370-73 (E.D.N.Y. 2014) (holding similar allegations were too "isolated and minor" to establish hostile work environment). Roginsky confirmed that Hassett did not harass him. Dkt. 33-2 ¶¶ 42-43. Hassett never demoted Roginsky. Hassett ¶ 13. Lightcap, not Hassett, moved Roginsky into the supervisory cubicle. Lightcap ¶ 9. Beno allegedly made a single, isolated (time-barred) comment in 2013 or 2014 that Roginsky never reported. Dkt. 33-2 ¶¶ 51-52, 54-55. Morrison was never

9

Roginsky's supervisor. Dkt. 33-2 ¶¶ 30-31. Roginsky admits that Chestnut and Beno never took any adverse employment action against him. *Id.* ¶¶ 62, 65.

Roginsky unreasonably failed to participate in M&T's investigation of the alleged harassment, and he misstates the record on this issue. Roginsky never provided Frank with factual details or the requested written statement to assist Frank in her investigation. Dkt. 33-2 ¶¶ 120-130. The contemporaneous documentary evidence shows that Frank requested a written statement, Roginsky promised to provide one, and then he never did. *Id.* ¶¶ 124-130; Dkt. 33-9 at 163:10-165:6. Roginsky provided his journal to Lightcap, who is not part of M&T's Human Resources Department. Dkt. 33-2 ¶¶ 131-135. Roginsky now asserts that his journal was his written statement (Dkt. 38-4 at 18), but that is not what he said when Frank was trying to conduct her investigation. Then, he told M&T's Human Resources Department that the journal "was not meant to be shared," and he criticized the bank for considering it. Dkt. 33-31 at 2; *see also* Dkt. 33-9 at 147:2-148:10. Roginsky did not cooperate with M&T's investigation, as required M&T's policy and applicable law.

**VII.   Roginsky never filed a complaint about Beno, and the claim is untimely.**

Roginsky's contention that he reported Beno's alleged comment in 2013 or 2014 (Dkt. 38-4 at 14) is contradicted by his own testimony. *See* Dkt. 33-9 at 37:8-38:7 (admitting that he does not recall submitting a complaint). Roginsky never reported Beno. Frank ¶ 12; Helmin ¶ 2. In any event, Roginsky says that Beno made the remark in late 2013 or early 2014 (Dkt. 33-9 at 36:18-20), which is well beyond the limitations period for Title VII and the HRL. *Odom*, 497 Fed. Appx. at 89; *Percy*, 264 F. Supp. 3d at 581. Beno's alleged comment is not evidence of a continuing pattern of harassment. It purportedly occurred three or four years before any of the other harassment alleged by Roginsky.

10

Dated: December 21, 2021

**HODGSON RUSS LLP**
*Attorneys for Defendant*

By  s/Robert J. Fluskey, Jr.
    Robert J. Fluskey, Jr.
    Matthew K. Parker
    Fallon E. Martin
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*rfluskey@hodgsonruss.com*
*mparker@hodgsonruss.com*
*fmartin@hodgsonruss.com*