UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BORIS ROGINSKY,                                    Index No.: 1:19-cv-01613(LJV)(JJM)

        PLAINTIFF,
                                                   **AFFIDAVIT OF BORIS**
    -against-                              **ROGINSKY**

M & T BANK,

       DEFENDANT.
_____

      Boris Roginsky, the Plaintiff in the above-referenced action, being duly sworn, hereby deposes and says under penalty of perjury:

1. I am the Plaintiff in the above-referenced action.  As such, I am fully familiar with the facts and circumstances herein.

2. I make this Affirmation in further connection with the Order to Show Cause signed by United States Magistrate Judge Jeremiah J. McCarthy on January 4, 2022, wherein the Court Ordered that, on or before January 18, 2022, my attorney and I may argue (in writing) why certain allegations contained within my Verified Complaint do or do not have factual support, and why my attorney and I should not be sanctioned for making such allegations.

3. Specifically, the Court asserts the claims included in Paragraphs 22, 27, 28, 29, 30, 31, and 32 "appear to have no factual support whatsoever."

4. I contacted my attorneys, Sanders & Sanders, in late 2018 to discuss my complaints about the hostile work environment and discrimination I experienced at M&T ("Defendant"). When I described my complaints to my attorneys, every factual allegation I made was based upon my own experiences, observations, recollection, and belief.  I believed

everything I told them was true, to the best of my ability.  At my request, my attorneys

then drafted an EEOC charge, and later the Verified Complaint, which contained the

allegations I communicated to them.  Before my attorneys submitted the EEOC charge

and before they filed the Verified Complaint, they provided me a copy for me to review

and verify that the allegations were true and correct.  Once I confirmed that the EEOC

Charge and later the Verified Complaint were accurate, I signed them to indicate that the

allegations were true and correct to the best of my knowledge, information and belief.

5.  By the time my deposition was held, many of the allegations were several years old.  As

such, I had some difficulty recalling specific details or the reasoning behind some of the

things I believed occurred.  Even though I was able to verify the allegations in the

Verified Complaint at the time it was filed, that was still over a year and a half prior to

my deposition, which further eroded my recollection of specifics regarding those

allegations.  At my deposition, when I could not remember a detail I was asked about, I

truthfully stated that I could not recall or that I was unable to answer the question.  I did

not make any false statements during my deposition.  Every one of the allegations I

included in the Verified Complaint was made in good faith, and were based upon my own

observations, experiences, and sincere beliefs.

6.  Regarding Paragraph 22, in which I claimed that Defendant's employees dropped money

on the floor in hopes that I would pick it up, this allegation was based upon my own

observations and beliefs.  While I truthfully testified at my deposition that I never saw

who specifically dropped the money on the floor, I did confirm that the money was

indeed on the floor in my work area on multiple occasions.  My testimony to that effect is

unrefuted.  It is undisputed that I worked on a floor with around a thousand other

2

employees.  If there was money on the floor, and I did not put it there, it stands to reason

that someone from M&T who worked on my floor must have dropped it there.  That I

never actually observed who specifically dropped money on the floor does not mean it

did not happen or that it was not done with the intent of harassing me on the basis of my

religion.  My claim is therefore reasonable.

7. Regarding Paragraphs 27 and 28, wherein I claimed that Julieta Ross, Joe Hassett, and

Joe Morrison followed me to a local hotel, I stood by these allegations during my

deposition.  I explained why, although I could not confirm the aforementioned

individuals were definitely present at the hotel on the date in question, I nevertheless

believed they were.  Roginsky Tr. 71-78.  I explained that "I believe I [saw] Julieta,"

even though "it was a long time ago," and that I believed Mr. Hassett and Mr. Morrison

were there because "the scene which was caused in the hotel made me believe there is

some kind of a conclusion [sic] by keeping me from my team," and that I overheard

someone speaking who sounded very similar to Mr. Hassett. Roginsky Tr. 71:20-23,

73:6-8, 78:11.  I also testified that while, "I cannot say completely" that Mr. Morrison

was there during that incident, I nevertheless believed he was.  Roginsky Tr. 80:18.  In

fact, right after it happened, I called a friend of mine and reported what I saw, and stated

that I believed Ms. Ross, Mr. Hassett, and Mr. Morrisson had indeed followed me at the

hotel to cause a scene.  I never admitted, at any point in time, that this allegation is false.

8. Regarding Paragraph 29, wherein I claimed that my wife and I were reported to an

agency as spies, this allegation was included in the Verified Complaint because I felt it

provided useful background information concerning the environment I was experiencing

and because I did not want to leave it out due to the possibility that Defendant did have

3

something to do with me being reported as a spy.   Paragraph 29 does not allege that

Defendant itself was responsible for reporting my wife or I – only that we were reported.

Because I did not know who reported us, I did not make that allegation.  While I thought

it was possible Defendant was responsible, I did not have any evidence of that.  I hoped

perhaps that could have been learned during the course of litigation.  As such, my

deposition testimony was consistent with this allegation, as I testified that I could not say

conclusively whether Defendant had anything to do with the incident.  In fact, during my

deposition, I testified, "I believe it could be [true] somewhat," and that this was based in

part on my belief at that time that someone had followed my wife and I to the Dominican

Republic and that someone had drawn a map of Russia on my lawn.  Roginsky Tr. 80-86.

In my belief, the latter incidents were too closely related to the hostile work environment

I experienced at Defendant to be mere coincidence.  As such, while I still do not have any

direct evidence that Defendant was involved, I still strongly believe Defendant had

something to do with those incidents – even though I do not have any direct evidence.

9.   Regarding Paragraph 30, wherein I claimed that Mr. S. Ziskind observed me while I was

on a vacation in the Dominican Republic, at the time I included this allegation in the

Verified Complaint because I sincerely believed Defendant had been causally connected

to Mr. Ziskind through his son and I believe he had observed me in the Dominican

Republic.  However, by the time my deposition took place, and upon further reflection in

thinking about that incident, I could no longer make the connection between that incident

and Defendant.  Therefore, I truthfully testified at the time of my deposition that I could

not make the connection at that time – even though I believed it to be true when I verified

the Complaint.

4

10. Similarly, regarding Paragraph 31, wherein I claimed that my wife and I were entering a grocery store and someone from Defendant stated "the thieves are coming," I was unable to recall during my deposition the reasons why I believed Defendant was responsible for this incident at the time I included it in my Verified Complaint.  That doesn't change the fact that the statement was made at the grocery store – it was.  I just couldn't recall at my deposition why I thought it was someone from Defendant.  Because of that lack of recollection, I acknowledged at my deposition that I was "not sure" it was someone from Defendant.  However, at the time I signed the Verified Complaint, I did sincerely believe every part of the allegation to be true.

11. Finally, regarding Paragraph 32, wherein I claim that someone at Defendant put a map of Russia on my front lawn, the explanation is similar.  I never claimed that someone put a paper map or plastic map of Russia on my lawn – I have always and still contend that the grass on my lawn was depressed to reflect the shape of a map of Russia.  I have a very good relationship with all of my close neighbors, so in light of the harassment I had experienced up to that point at work, I made the reasonable connection that any further harassment attempts based on my national origin must have come from someone at work. At the time the Verified Complaint was filed, for the reasons set forth herein, I believed Defendant was behind this incident.  That is why at my deposition I stated, in response to questions about whether Defendant was involved in this incident, "What other things should come to anybody's mind?"  Roginsky Tr. 91:3-4.   I admitted I was not able to make the connection between Defendant and the incident on my lawn but I never admitted the incident did not occur – only that I could not make the connection to Defendant at that time.  That I was unable to recall a year and a half later the connection

that led me to believe Defendant was involved does not mean I made that claim in bad faith or that it was false. I did truly believe at the time that I saw an imprint of a map of Russia on my lawn and I believed that someone at Defendant was responsible for it.

12. With each of the above claims, they were included in the Verified Complaint because I made the connection at the time that I believed they related to conduct on the part of someone who worked at Defendant. Given everything else that I had experienced before each of those incidents, it was difficult not to infer that each incident must have been related to the overall hostile work environment I had experienced. I was experiencing a wide variety of harassment at work, and it was reasonable for me to believe these other incidents were not simply coincidence. Again, while I was unable to confirm at my deposition whether Defendant actually had a role in the aforementioned incidents, that does not mean I made those allegations in bad faith. To the contrary, I sincerely believed those allegations at the time the Verified Complaint was filed.

13. For the foregoing reasons, I respectfully submit that the Court's analysis of the allegations in Paragraphs 22, 27, 28, 29, 30, 31, and 32 of the Verified Complaint is incorrect, and therefore, that sanctions are not appropriate. There is no evidence that I did not genuinely believe those allegations were true at the time I made them. I did not, nor would I ever, make any statement to the Court unless I firmly believed it was true.

Boris Roginsky
Boris Roginsky

Sworn to before me on this
12th day of January, 2022

Notary Public

SEAN G. SOMERS
Notary Public - State of Florida
Commission # GG 961195
My Comm. Expires May 9, 2024
Bonded through National Notary Assn.

6